UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHELLE MOLT

        Plaintiff,

        v.                             **REPORT AND RECOMMENDATION**
                                                  05-CV-0418 (NPM)

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I. Introduction

Plaintiff Michelle Molt brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Childhood Disability Benefits ("CDB").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rules of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Jo Anne Barnhart as the defendant in this action.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated July 1, 2009.

1

and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[3]

## II.     Background

Plaintiff received Supplemental Security Income ("SSI") Childhood Disability payments until her eighteenth birthday, March 28, 1986 (R. at 15).[4] At the time of the ALJ's decision, on July 2, 2004 Plaintiff was receiving SSI (R. at 15, 22). Plaintiff had applied for CDB on April 17, 2003, alleging an onset date of January 1, 1989 (R. at 28). In order to receive CDB, the Plaintiff had to establish a disability before her twenty-second birthday, March 28, 1990 (R. at 15, 198); Plaintiff's Brief, p. 2. Thus, the relevant time period for the purposes of this decision began on January 1, 1989, Plaintiff's alleged onset date, through March 28, 1990, her twenty-second birthday. Plaintiff alleges disability due to depression, schizophrenia, and asthma. Her application was denied initially on June 12, 2003 (R. at 28). Plaintiff filed a request for a hearing on June 23, 2003 (R. at 34).

On June 8, 2004, Plaintiff appeared before the ALJ (R. at 195). The ALJ considered the case *de novo* and, on July 2, 2004, issued a decision finding Plaintiff not disabled (R. at 15-22). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on February 17, 2005 (R. at 4-7). On April 5, 2005, Plaintiff filed this action.

Based on the entire record, the Court recommends remand because the ALJ's credibility analysis is flawed, the ALJ failed to fully develop the record, and the residual

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."

functional capacity "RFC" is not supported by substantial evidence.

### III.     Discussion

#### A.     Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258

(2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner

---

[5] The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

>    **B.    Analysis**
>        **1.  The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: 1) Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability; 2) Plaintiff's borderline personality disorder was severe; 3) Plaintiff experienced no severe physical impairments; 4) Plaintiff's borderline personality disorder did not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4; 5) Plaintiff's allegations were not totally credible; 6) Plaintiff had the ability "to perform work at any exertional level; should work in a low stress environment with no production line type of pace or independent decision making responsibilities; was limited to unskilled work involving routine and repetitive instructions and tasks; and should have no more then [sic] occasional interaction with other persons;" 7) Plaintiff was unable to perform any of her past relevant work; 8) Plaintiff was capable of performing work in the national economy, such as a cleaner or laundry worker (R. at 21). Ultimately, the ALJ found that

Plaintiff was not under a disability at any time through the date of his decision. Id.

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is contrary to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues that a) the ALJ erred in assessing Plaintiff's credibility; b) the ALJ erred in failing to fully develop the record; c) the ALJ erred in discounting the opinions of Plaintiff's treating psychiatrist; d) the ALJ erred in finding her asthma not severe; e) the RFC is not supported by substantial evidence; f) the ALJ erred in failing to find Plaintiff met the Listings; g) the ALJ erred in failing to find that Plaintiff was diagnosed with severe depression and schizophrenia before March 28, 1990; h) the ALJ presented a flawed hypothetical to the vocational expert "VE."

### a) The ALJ's Credibility Analysis is Flawed

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p,

1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[6] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ stated that he:

> did not find the claimant to be entirely credible. She was attempting to describe her symptoms and limitations of almost fifteen years ago. The Administrative Law Judge did not find her testimony to be reliable, in that she simply stated that she has been depressed and mentally dysfunctional almost all of her life. That is not very helpful in terms of establishing specific symptoms and limitations as of a specific time period. Moreover, the Administrative Law Judge notes that, after the claimant stopped receiving childhood benefits and before her receipt of SSI benefits in 1994, she worked for about three years as a cashier. Thus, she could not have been as completely dysfunctional as she alleges

(R. at 17-18). The ALJ failed to complete both steps one and two of the two-step process. This failure is error and warrants remand. See Crysler v. Astrue, 563 F.Supp.2d 418, 441 (N.D.N.Y. 2008) (remanding, in part because the ALJ failed to "state in his decision whether plaintiff's medical impairments could reasonably be

---

[6] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

expected to produce the pain or other symptoms alleged"); Hogan v. Astrue, 491 F.Supp.2d 347, 352-353 (W.D.N.Y. 2007) (remanding, in part, because the ALJ failed to find whether plaintiff's impairments "could reasonably be expected to produce the pain . . . she alleged" despite noting that the ALJ "carefully review[ed]" the seven factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii)).

The ALJ also failed to engage in any meaningful analysis of the factors. Instead, the ALJ "did not find her testimony to be reliable, in that she simply stated that she has been depressed and mentally dysfunctional almost all of her life" (R. at 18). According to the ALJ, this testimony was "not very helpful in terms of establishing specific symptoms and limitations as of a specific time period." Id. However, this is an insufficient analysis and basis to find Plaintiff's testimony not entirely credible. Moreover, if the ALJ found Plaintiff's testimony not helpful, he should have asked more probing questions. See Decker v. Harris, 647 F.2d 291, 299 (2d Cir. 1981) (internal citations and quotations removed) (the ALJ has an "affirmative duty to inquire into all the matters at issue, a duty that is not obviated by the presence of counsel representing the applicant").

There is only one aspect of the ALJ's analysis that is arguably part of a credibility analysis. The ALJ noted that Plaintiff worked for three years, which he found inconsistent with her claims that she was "as completely dysfunctional as she alleges" (R. at 18). However, the ALJ's one finding clearly does not amount to reasons stated "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young, 2008 WL 4518992, at *11 (quoting Brandon, 666 F.Supp at 608).

Therefore, the Court recommends remand to allow the ALJ to engage in a proper credibility analysis.

### b)  The ALJ Erred in Failing to Fully Develop the Record

While somewhat unclear, the Court assumes that Plaintiff is arguing that the ALJ erred in failing to obtain a psychiatric consultative examination. Plaintiff's Brief, p. 8.

According to the regulations, a claimant will be sent to a consultative examination if the evidence from her treating sources is insufficient for a finding of disability. 20 C.F.R. § 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense."). However, "[g]enerally, we will not request a consultative examination until we have made every reasonable effort[7] to obtain evidence from your own medical sources." Id. Thus, while Plaintiff argues that a consultative examination was required, the first step of that argument is to determine whether the ALJ appropriately developed the record in regards to Plaintiff's treating psychiatrist, Dr. Kronick.

The ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982).  This duty exists regardless of whether Plaintiff has counsel or is continuing *pro se*. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).  If the evidence received is not adequate to determine whether an individual is disabled, additional information must be gathered by first re-contacting

---

[7] "'Every reasonable effort' means that we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of our followup request to reply, unless our experience with that source indicates that a longer period is advisable in a particular case." 20 C.F.R. § 404.1512(d)(1).

9

Plaintiff's treating physician.  20 C.F.R. § 404.1512(e)(1).

"The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations."  Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (citing Devora v. Barnhart, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002)).  Because of this 'particularly important' duty, the ALJ has an affirmative obligation to make reasonable efforts to obtain from Plaintiff's treating physicians any necessary reports, including an assessment of Plaintiff's functional limitations.  Dickson, 2008 WL 4287389, at *13.

Here, there are no functional assessments or even a medical source statement from Plaintiff's treating psychiatrist, Dr. Kronick, or any of Plaintiff's treating sources. There is also no indication from the record that the ALJ requested her treating sources supply opinions. Thus, the ALJ erred in failing to re-contact Dr. Kronick to request a functional assessment of Plaintiff's mental limitations. See Dickson, 2008 WL 4287389, at *13 (citing Devora, 205 F.Supp.2d at 172) (the ALJ has an affirmative obligation to make reasonable efforts to obtain from Plaintiff's treating physicians any necessary reports, including an assessment of Plaintiff's functional limitations); Bennett v. Astrue, 2009 WL 1035106, at *11 (N.D.N.Y. Apr. 17, 2009) (citations omitted) ("The ALJ had an affirmative duty, even if plaintiff was represented by counsel, to develop the medical record and request that plaintiff's treating physicians assess plaintiff's functional capacity.").

Moreover, the Court notes that the ALJ was previously made aware of the need to develop the record. On May 19, 2003, the Social Security Administration ("SSA")

asked psychologist, Michelle Marks, to review Plaintiff's medical history and offer advice on Plaintiff's limitations during the relevant time period (R. at 142). Dr. Marks responded requesting more evidence. Id. Dr. Marks commented that there was little evidence from 1989 through 1994 on which to base a decision.[8] Id. Dr. Marks also noted that, based on the sparse record, Plaintiff had not been diagnosed with schizophrenia during that time period. Id. On June 3, 2003, the SSA responded indicating that there was no further evidence and again requested advice (R. at 160). Dr. Marks stated that Plaintiff's case required a mental examination from either Plaintiff's treating source or a consultative examiner. Id. Because the results from an examination are not in the record, clearly the ALJ failed to act on this advice.

Based on the foregoing, the Court recommends remand to allow the ALJ to request a functional assessment of Plaintiff's limitations from her treating psychiatrist, Dr. Kronick. If, however, the ALJ is unable to obtain such an assessment, he is obligated to send Plaintiff to a psychiatric consultative examiner. 20 C.F.R. § 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.").

### c) The ALJ on Remand Should Revisit his Analysis of the Treating Psychiatrist's Assessment in Light of Newly-Obtained Evidence.

Plaintiff argues that the ALJ erred in dismissing the opinions from Plaintiff's treating psychiatrist, Dr. Kronick. Plaintiff's Brief, pp. 7-8. Specifically, Plaintiff argues

---

[8] At the time of the ALJ's decision, the only evidence from the relevant time period was Plaintiff's hospitalization, from January 27, 1989 through February 9, 1989, for a suicide attempt (R. at 88-91).

that the ALJ should have granted controlling weight to Dr. Kronick's opinions concerning Plaintiff's onset date and diagnoses. Id.

The Court has previously recommended remand for failure to attempt to obtain a functional assessment or MSS from Dr. Kronick. Therefore, the Court will not reach whether the ALJ correctly evaluated Dr. Kronick's opinions currently in the record because the ALJ must necessarily re-evaluate Dr. Kronick's opinions once the record has been fully developed.

### d) The ALJ's Finding that Plaintiff's Asthma is Not Severe is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in finding her asthma not severe. Plaintiff's Brief, p. 8.

At the severity step, only de minimis claims may be properly screened out. Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). A finding of not severe is appropriate when an impairment, or combination of those impairments "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

The ALJ found that Plaintiff "ha[d] no severe physical impairments during the period under adjudication, and none have been alleged by the claimant. During a hospitalization in January 1989, the physical examination was essentially normal with the physician noting that the claimant had a history of asthma that was well controlled by medication" (R. at 17). The ALJ's analysis is supported by substantial evidence.

First, the ALJ is correct in noting that Plaintiff failed to allege that any of her physical impairments limited her ability to work. For example, Plaintiff completed a disability report on April 17, 2003 (R. at 47-56). When asked "[w]hat are the illnesses,

injuries or conditions that limit your ability to work," Plaintiff responded with "mental illness" (R. at 48). That question was repeated in a second disability report completed the same day (R. at 57). Plaintiff responded with "schizophrenia." Id. Plaintiff completed a third SSA form on May 7, 2003 (R. at 67-74). Plaintiff was asked whether her "illnesses, injuries, or conditions affect [her] sleep" (R. at 68). Plaintiff responded by stating that "[she] suffer[s] from Chronic Paranoid Schizophrenia; sometimes if [she] forget[s] to take [her] meds or [is] too stressed [she] do[es]n't sleep right." Id. Plaintiff also fails to mention asthma at her hearing. Plaintiff was asked "what happened on January 1, 1989 that caused you to be disabled" (R. at 200). Plaintiff's response, while somewhat incoherent, was related solely to her mental impairments (R. at 201).

The ALJ was also correct in noting that during her hospitalization stay in January 1989, Plaintiff's asthma "was well controlled with medication" (R. at 17). On discharge, the hospital noted that Plaintiff's "asthma was managed throughout the course of this hospitalization by the use of a proventil inhaler with good effect" (R. at 89).

Therefore, the ALJ's finding that Plaintiff's asthma is not severe is supported by substantial evidence.

### e)  The RFC is Not Supported by Substantial Evidence

An individual's "residual functional capacity is the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  In order to determine a claimant's RFC, the ALJ must assess "all of the relevant medical and other evidence."  § 404.1545(a)(3). Also, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work" "on a regular and continuing basis." §§ 404.1545(a)(4), (b). Regular and continuing basis is defined as "8 hours a day, for five

days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1.

The ALJ found that Plaintiff was "limited to work in a low stress environment with no production line type of pace or independent decision making responsibilities; is limited to unskilled work involving routine and repetitive instructions and tasks; and should have no more then [sic] occasional interaction with other persons" (R. at 17). The Court cannot determine how the ALJ arrived at these limitations. Because no treating sources offered functional assessments, Plaintiff was not seen by a consultative examiner, and Dr. Marks was not able to offer an opinion based on the sparse evidence, the ALJ had no medical opinions on which to rely.

Moreover, the ALJ committed error by not including a narrative explaining how he arrived at this RFC. See Hogan, 491 F.Supp.2d at 354 (quoting SSR 96-8p, 1996 WL 375184, at *7 (S.S.A.)) ("It is well-settled that '[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'"); See also White v. Sec'y of Health & Human Servs., 910 F.2d 64, 65 (2d Cir. 1990) ("[T]he failure to specify the basis for a conclusion as to residual functional capacity is reason enough to vacate a decision of the Secretary . . . .").

The ALJ's sole statement in support of the RFC was that he was "[g]iving the claimant the maximum benefit of the doubt" (R. at 17). However, the ALJ's declaration lacks substance. The ALJ failed to include any limitations resulting from her auditory hallucinations, the only impairment Plaintiff testified about at the hearing with any clarity (R. at 204, 205). Moreover, the ALJ's finding that Plaintiff was not "entirely credible" is inconsistent with his assertion that he was "[g]iving the claimant the maximum benefit of

the doubt" (R. at 17).

Therefore, on remand, the ALJ must re-assess Plaintiff's functional limitations and include a narrative explaining his findings.

### f) Plaintiff's Remaining Arguments

Plaintiff also argues that the ALJ erred in i) failing to find Plaintiff met Listings 12.03, 12.04, and 12.08; ii) failing to find that Plaintiff was diagnosed with severe depression and schizophrenia before March 28, 1990; and iii) presenting a flawed hypothetical to the vocational expert "VE." Plaintiff's Brief, pp. 6, 10. However, because of the previous errors, most notably the ALJ's failure to fully develop the record, the Court cannot reach Plaintiff's arguments.

## IV.  Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge


DATED:    Syracuse, New York
          December 4, 2009

15

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


DATED:    Syracuse, New York
          December 4, 2009